IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| CELLAIRIS FRANCHISE, INC. and GLOBAL CELLULAR, INC., <br><br> Plaintiffs, <br><br> v. <br><br> GMD SILVER, INC., and GOLAM RAHMAN, individually. <br><br> Defendants. | Case No.  2:14-cv-00306-WCO |

## COMPLAINT

Cellairis Franchise, Inc. ("Cellairis") and Global Cellular, Inc. ("Global") (collectively referred to as "Plaintiffs") file this Complaint against Defendant GMD Silver, Inc., ("GMD Silver"), and Defendant Golam Rahman ("Rahman") (collectively referred to as "Defendants") and respectfully show this Court the following:

## INTRODUCTION

1.     This is an action to recover past due amounts owed by Defendants to Plaintiffs pursuant to Defendant GMD Silver's franchise agreements with Cellairis, GMD Silver's sub-license agreements with Global, and Defendant Rahman's personal guaranty wherein he has agreed to be personally liable for all amounts owed by GMD Silver to Plaintiffs.   Defendant GMD Silver was a

- 1 -

franchisee of Cellairis business units and a sub-licensee of Global for the occupancy of the premises where the business units were located. Defendant Rahman is the President of GMD Silver, and Defendant Rahman executed a personal guaranty that guarantees all of the obligations of GMD Silver owed to Cellairis and Global.

## PARTIES, JURISDICTION, AND VENUE

2.     Plaintiffs are affiliates, and are Georgia corporations, organized, existing and qualified to do business in the State of Georgia with their principal places of business in Georgia at 6485 Shiloh Road, Bldg. B #100, Alpharetta, GA 30005.

3.     Defendant GMD Silver, Inc., is an Ohio corporation with its principal place of business at 5148 Silver Woods Ln., Dublin, Ohio 43016. In Paragraph 13(c) of the 2012 Franchise Agreement attached as *Exhibit A,* GMD Silver consented to personal jurisdiction in Georgia and venue in this Court. Additionally, GMD Silver is subject to the personal jurisdiction of this Court under the Georgia Long-Arm statute, O.C.G.A. § 9-10-91, because GMD Silver transacts business in Georgia.

4.     Defendant Rahman is the President of GMD Silver, has personally guaranteed all of the payments and performances of GMD Silver, is a resident of

the State of Ohio, and resides at 5148 Silver Woods Ln., Dublin, Ohio 43016.  In the Personal Guarantee and Subordination Agreement attached as ***Exhibit C,*** Mr. Rahman consented to personal jurisdiction in Georgia and to venue in this Court. Additionally, Mr. Rahman is subject to the personal jurisdiction of this Court under the Georgia Long-Arm statute, O.C.G.A. § 9-10-91, because he transacts business in Georgia.

5.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the matter is between citizens of different states.  Plaintiffs are citizens of Georgia.  Defendants are citizens of Ohio.

6.     The Northern District of Georgia is an appropriate venue both because Defendants have consented to that venue (as described above) and because a substantial part of the acts or omissions giving rise to this dispute occurred in this district and in this division.  28 U.S.C. § 1391(b).  Venue is appropriate in this division pursuant to LR, N.D. Ga. 3.1(b)(2) and Appendix A thereto.

## FACTUAL BACKGROUND

7.     Cellairis is the owner of a franchise system ("System") for the operation of Cellairis® branded business units ("Business Units") which specialize

in the sale of wireless/cellular telephone accessories and other related products ("Products") and services such as phone repair ("Services"), and Cellairis sells franchises to citizens of this state and other states across this country to operate Business Units that utilize the System.

8.     Global sells Products to Cellairis franchisees for re-sale from the Business Units.  Global also enters into either lease or license agreements with landlords, and then either subleases or sub-licenses these agreements to Cellairis franchisees.

9.     GMD Silver has entered into various franchise agreements with Cellairis for the operation of Business Units at spaces across the country.  On July 13, 2012, GMD Silver entered another franchise agreement with Cellairis for the operation of a Business Unit ("2012 Franchise Agreement") at Space Number CRT05 at Queens Center Mall in Elmhurst, N.Y. for a period of 5 years.  A true and correct copy of the 2012 Franchise Agreement, along with any amendments thereto, is attached as *Exhibit A*.

10.     GMD Silver has also entered into sub-lease and sub-license agreements with Global for the occupancy of spaces for operation of the business units described above.  On December 17, 2012, for example, GMD Silver entered into a sub-license agreement with Global for the occupancy of Space CRT05 at

Queens Center Mall ("2012 Sub-license Agreement").  A true and correct copy of that agreement is attached as ***Exhibit B***.

11.    Rahman entered into a personal guaranty and subordination agreement with Cellairis to guaranty all of the payments and performance for GMD Silver to Cellairis and Global in the 2012 Franchise Agreement ("Personal Guaranty").  A true and correct copy of the Personal Guaranty is attached as ***Exhibit C***.

**2012 Franchise Agreement**

12.    Pursuant to Paragraph 3(A) of the 2012 Franchise Agreement (as in other franchise agreements between Plaintiffs and GMD Silver), "FRANCHISEE [GMD Silver] agree[ed] to pay to Company [Cellairis] a monthly royalty . . . for the use of the System and the Marks."

13.    Pursuant to Paragraph 10(A)(7) of the 2012 Franchise Agreement (as in other franchise agreements between Plaintiffs and GMD Silver), an event of default by Franchisee occurs if "FRANCHISEE fails to pay when due any Royalty to Company.  FRANCHISEE shall have five (5) days after notification to cure the delinquency."

14.    Pursuant to Paragraph 10(A)(8) of the 2012 Franchise Agreement (as in other franchise agreements between Plaintiffs and GMD Silver), an event of

default by Franchisee occurs if "FRANCHISEE fails to pay when due any amount owed to an affiliate of the Company for Products or other materials, equipment or Services. FRANCHISEE shall have five (5) days after notification to cure the delinquency."

15.     Pursuant to Paragraph 10(A)(23) of the 2012 Franchise Agreement (as in other franchise agreements between Plaintiffs and GMD Silver), an event of default by Franchisee also occurs for

> Failure to timely pay any License Payment [such as rent or fees] or other money due to the lessor, licensor, sublessor or sub-licensor (which may include Company or an affiliate of Company as sublessor or sub-licensor) under the applicable lease, license, sublease or sub-license, or default under any other term of the lease, license, sublease or sub-license within any applicable cure period. FRANCHISEE shall have five (5) days after notification to cure the default.

16.     Pursuant to Paragraph 10(A)(27) of the 2012 Franchise Agreement (as in other franchise agreements between Plaintiffs and GMD Silver), Franchisee also causes an event of default as follows,

> Failure to cure a default FRANCHISEE has under any other agreement with Company or an affiliate within the applicable cure period. If this act of default shall occur, Company shall have the right to terminate this Agreement, such termination to be effective upon notice to FRANCHISEE but with no opportunity to cure.

17.     Paragraph 10(C) of the 2012 Franchise Agreement provides,

> Any default or breach by FRANCHISEE, its affiliates,
> subsidiaries and/or any guarantor of FRANCHISEE of
> any of the underlying agreements ancillary to this
> Agreement including but not limited to any lease,
> sublease or sublicense relating to the Location will be
> deemed a default under this Agreement. Any default or
> breach by FRANCHISEE, its affiliates, subsidiaries
> and/or any guarantor of FRANCHISEE of any other
> franchise agreement for a Business Unit between
> Company and FRANCHISEE and/or its affiliates,
> subsidiaries or any guarantor of FRANCHISEE will be
> deemed a default under this Agreement. Any default or
> breach by FRANCHISEE, its affiliates and/or any
> guarantor of FRANCHISEE of any other agreement
> between Company or its affiliates and FRANCHISEE
> and/or such other parties will be deemed a default under
> this Agreement. FRANCHISEE's "affiliates" means any
> persons or entities controlling, controlled by or under
> common control or ownership with FRANCHISEE.

18.     Under Paragraph 10(C), breaches of all other agreements are also

breaches of the 2012 Franchise Agreement.  Plaintiffs may therefore recover for

those breaches by suing for breach of the 2012 agreement.

**The 2012 Sub-license Agreement**

19.     Pursuant to the preamble and Paragraph 1 of the 2012 Sub-license

Agreement (as in other sub-license and sub-lease agreements between Plaintiffs

and GMD Silver), GMD Silver agreed to pay "Fees" and such amounts "shall be

payable in advance so that it is received by Company [Global] on or before the

25th day of the previous month . . . ."

- 7 -

20.    Pursuant to Paragraph 1 of the 2012 Sub-license Agreement (as in other sub-license and sub-lease agreements between Plaintiffs and GMD Silver) GMD Silver "agree[ed] to pay the Fees set forth herein to Company [Global] in the manner set forth" in that agreement. Also pursuant to that paragraph, "[a]ll payments not paid when due shall bear a late charge of one hundred dollars per day ($100.00)."

21.    Pursuant to Paragraph 12 of the 2012 Sub-license Agreement (as in other sub-license and sub-lease agreements between Plaintiffs and GMD Silver), if GMD Silver "fails to perform or observe any of its covenants under this Sub-license within five (5) days after Company [Global] gives it notice of default, Company may immediately: (a) revoke, terminate or cancel this Sub-License Agreement by notifying the Sub-licensee and upon such revocation, termination or cancellation, Sub-licensee shall be liable to Company for all damages sustained by it by reason of Sub-licensee's breach of covenant and of the revocation, termination or cancellation."

22.    Additionally, pursuant to Paragraph 14 of the 2012 Sub-license Agreement (as in other sub-license and sub-lease agreements between Plaintiffs and GMD Silver), "Company [Global] shall have the option and right to immediately revoke and terminate this Sub-license Agreement upon the happening

of any of the following events: (a) if the Franchise Agreement expires and is not renewed or is terminated for any reason whatsoever or otherwise terminates, irrespective of the reason for such termination[.]"

**Breaches of Various Agreements**

23.    GMD Silver has defaulted on numerous payment obligations under various agreements with Plaintiffs in an amount to be proven at trial, but no less than $100,000.00.

**Termination**

24.    As provided for in Paragraph 10(A)(31) in the 2012 Franchise Agreement, because of GMD Silver's many breaches of the 2012 Franchise Agreement, Cellairis and Global were not required to provide GMD Silver with an opportunity to cure the breaches prior to termination.  Nevertheless, in a spirit of good faith, on October 23, 2014, Cellairis and Global provided Defendants with a 15 day opportunity to cure the defaults by paying the monies owed.

25.    Defendants did not respond until a month later.   Defendants did not deny or cure the defaults.   Instead, Defendants threatened their own lawsuit against Plaintiffs (for purported RICO violations, no less).

26.    As a result, on December 2, 2014, Cellairis terminated the 2012 Franchise Agreement for failure to pay monies owed, as well as all other franchise

agreements, sub-license agreements, and sub-lease agreements with GMD Silver.

A true and correct copy of the termination letters are attached as ***Exhibit D.***

27.     Pursuant to Paragraph 14 of the 2012 Sub-license Agreement, "[u]pon

such revocation and termination, all present and future sums due from Sub-

licensee shall immediately become due and payable."

28.     Pursuant to Paragraph 11(B) of the 2012 Franchise Agreement, upon

termination

> FRANCHISEE shall immediately pay all amounts due to
> Company, its affiliates, and all other suppliers.
> Termination of this Agreement shall not terminate any
> monetary obligation that FRANCHISEE may owe
> Company, its affiliates, or any other person or entity as
> may be required by this Agreement, and shall not entitle
> FRANCHISEE to any refund of any monies previously paid
> pursuant to the terms of this Agreement.

## COUNT I
## BREACH OF 2012 FRANCHISE AGREEMENT AGAINST
## DEFENDANT GMD SILVER

29.     Plaintiffs re-allege and reincorporate the allegations contained in the

paragraphs above verbatim as if fully set forth herein.

30. GMD Silver has failed to pay past due royalties, fees, and rents under various franchise agreements, sub-license agreements, and sub-lease agreements in an amount to be determined at trial.[1]

31. GMD Silver has breached the various franchise agreements, sub-license agreements, and sub-lease agreements by failing to make these payments when due to Cellairis and its affiliate, Global. GMD has therefore breached the "Cross-Defaults" provision of Paragraph 10(C) of the 2012 Franchise Agreement.

32. Such breach of Paragraph 10(C) in the 2012 Franchise Agreement entitles Plaintiff to recover damages for all breaches of the various agreements.

33. Section 3(C) of the 2012 Franchise Agreement states, "Any payment due to Company not paid when due shall bear interest at the maximum rate allowed by Georgia law or, if no maximum rate relating to this transaction is in effect in the State of Georgia, 18% per annum."

34. Section 13(K) of the 2012 Franchise Agreements states, "In any arbitration or litigation to enforce the terms of this Agreement, all costs and all

---

[1] As a result of the terminations of the franchise agreements due to Defendants' failure to cure their breaches of the franchise agreement within the applicable cure period (if any), Plaintiffs are entitled to recover lost future royalties and other future damages for the remaining period of the franchise agreement. Plaintiffs reserve the right to assert such claim in this proceeding or in a separate forum as provided for in the franchise agreement and Plaintiffs are in no way waiving such claim.

attorney's fees (including those incurred on appeal) incurred as a result of the legal action shall be paid to the prevailing party by the other party."

35.     As a direct and proximate result of GMD Silver's breaches of the 2012 Franchise Agreement, Plaintiffs are entitled to actual damages in an amount to be determined at trial, plus prejudgment interest of 18% per annum, reasonable attorney's fees, expenses of litigation, and all costs of court.

## COUNT II
## BREACH OF PERSONAL GUARANTIES AGAINST DEFENDANT RAHMAN

36.     Plaintiffs re-allege and reincorporate the allegations contained in the paragraphs above verbatim as if fully set forth herein.

37.     Pursuant to the Personal Guaranty, Rahman "personally and unconditionally guarantee[d] all debts and obligations which Franchisee [GMD Silver] may incur to Company [Cellairis] or to affiliates of the Company [Global] . . . ." and "agree[d] to be personally bound by and personally liable for the breach of each and every provision in the Franchise Agreement."

38.     The Personal Guaranty further states that it is "an irrevocable, unconditional and absolute guarantee of payment and performance by the Franchisee and the undersigned Guarantors agree that the undersigned's liability under this Guaranty Agreement will be immediate and will not be contingent upon

the exercise and enforcement by Company of whatever remedies it may have against the Franchisee . . . ."

39.    Additionally, the Personal Guaranty states that

> If Company is required to enforce this Guarantee Agreement in a judicial or arbitration proceeding, and prevails in such proceeding, Company shall be entitled to reimbursement of its costs and expenses, including, but not limited to, reasonable accountants', attorneys' . . . fees . . . court costs, other litigation expenses, . . . whether incurred prior to, in preparation for, or in contemplation of the filing of any such proceeding.  If Company is required to engage legal counsel in connection with any failure by the undersigned to comply with this Guarantee Agreement, the undersigned shall reimburse Company for any of the above-listed costs and expenses Company incurs.

40.    Rahman is liable to Plaintiffs  under the Personal Guaranty for GMD Silver's failure to pay monies owed to Plaintiffs under the parties' agreements, including the 2012 Franchise Agreement.

41.    As a direct and proximate result of Defendant Rahman's breaches of the Personal Guaranty, Plaintiffs are entitled to actual damages in an amount to be determined at trial, plus prejudgment interest of 18% per annum, reasonable attorney's fees, expenses of litigation, and all costs of court.

## COUNT III
## EXPENSES OF LITIGATION (O.C.G.A. § 13-6-11)

42.    Defendants have acted in bad faith, have been stubbornly litigious, and have caused Plaintiffs unnecessary trouble and expense.

43.    Defendants have repeatedly breached the parties' agreements, and Defendants have not cured those breaches despite having an opportunity to do so. In that regard, Defendants have failed to pay monies owed to Plaintiffs, thereby requiring Plaintiffs to commence this lawsuit.

44.    Plaintiffs are therefore entitled to recover their expenses of litigation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray as follows:

(a)    That Summons issue and that Defendants be served as provided by law;

(b)    That Defendants, jointly and severally, be ordered to pay Plaintiffs' actual damages in an amount to be determined at trial, but no less than $100,000, plus prejudgment interest at the rate of 18% per annum;

(c)    That Defendants, jointly and severally, be ordered to pay all costs of the action;

(d)    That Defendants, jointly and severally, be ordered to pay Plaintiffs' reasonable attorney's fees and expenses of litigation pursuant to Paragraph 13(K) of the 2012 Franchise Agreements, the Personal Guarantee, and O.C.G.A. § 13-6-11;

(e)    A trial by jury on all issues so triable; and

(f)    For such other relief as this Court deems just and proper.

Respectfully submitted, this 19th day of December, 2014.

/s/John P. Jett

KILPATRICK TOWNSEND          Stephen E. Hudson
     & STOCKTON LLP          Georgia Bar No. 374692
1100 Peachtree Street, Suite 2800    John P. Jett
Atlanta, Georgia  30309-4528    Georgia Bar No. 827033
Telephone: (404) 815-6500    Josh C. Hess
Facsimile: (404) 815-6555    Georgia Bar No. 371139
shudson@kilpatricktownsend.com
jjett@kilpatricktownsend.com
jchess@kilpatricktownsend.com

*Attorneys for Plaintiffs Cellairis Franchise, Inc. and Global Cellular, Inc.*

## <u>LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing pleading filed with the Clerk of Court has been prepared in 14 point Times New Roman font in accordance with Local Rule 5.1(C).

Dated: December 19, 2014.

<u>  /s/ John P. Jett  </u>
John P. Jett